IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE CEASAR, | : |
| | : |
| Petitioner | : |
| | : CIVIL NO. 4:CV-07-2201 |
| | : |
| v. | : (Judge Jones) |
| | : |
| DESIGNATION SENTENCE | : |
| COMPUTATION CENTER | : |
| EXAMINER, *et al.*, | : |
| | : |
| Respondents | : |

## **MEMORANDUM**

March 25, 2009

Presently before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) filed by Petitioner Maurice Ceasar ("Petitioner" or "Ceasar"), an inmate presently confined at the Federal Correctional Institution - Schuylkill ("FCI Schuylkill") in Minersville, Pennsylvania. Petitioner alleges that an examiner at the Designations Sentence Computation Center[1] ("DSCC") erroneously calculated the time he owes on a twenty year sentence imposed in 1983 that should have been completed in 2003. (*See* Doc. 1-1 at 5-11). He further alleges that the

---

[1] The DSCC is the component of the Bureau of Prisons ("BOP") responsible for computing sentences of federal inmates. The DSCC is part of the BOP Grand Prairie Office Complex in Grand Prairie, Texas. *See* http://www.bop.gov/about/other/gra.jsp.

Bureau of Prisons ("BOP") and United States Parole Commission ("the Commission") have accepted the erroneous calculation and that, because his sentence should have expired in 2003, he should no longer be subject to the jurisdiction of the Commission. (*See id.*). He requests that the Court "correct, vacate, or set aside" his 1983 case so that it is not "misused to house new sentence or other time on it." (*Id.* at 14).

In addition, Petitioner requests that the Court terminate the term of supervised release that he will be required to serve pursuant to the sentence imposed by the District of Columbia Superior Court in 2007 on charges of second degree burglary and second degree theft. (*See id.* at 15; Doc. 11-2 at 46, 1/11/07 Judgment in a Criminal Case).

Petitioner also has filed motions requesting that the remainder of his 1983 sentence be vacated. (*See* Docs. 25, 26, 29, 33). For the reasons that follow, the Petition and the motions will be denied.

I.  BACKGROUND

On August 15, 1983, Ceasar was sentenced by the District of Columbia Superior Court to a term of twenty (20) years in prison for assault with intent to commit robbery while armed. (Doc. 11-2 at 2, 12/31/86 Face Sheet). On March 16, 1987, the District of Columbia Board of Parole (the "Board") paroled Ceasar and

directed that he remain under parole supervision until June 29, 2003. (*Id.* at 3, 3/17/87 Parole Notification).

On April 8, 1992, the Board issued a warrant charging Ceasar with violating non-criminal conditions of parole. (*Id.* at 4, 4/8/92 Notice of Board Order). Following his arrest on the warrant, the Board decided to reinstate Ceasar's parole rather than revoke it. (*Id.* at 5, 6/18/92 Notice of Board Order).

On December 16, 1992, the Board issued a warrant charging Ceasar with violating non-criminal conditions of parole. (*Id.* at 6, 12/16/92 Notice of Board Order). Ceasar was not arrested on the warrant until September 6, 1995. (*Id.* at 7, 9/6/95 Warrant Return). After a revocation hearing, the Board revoked Ceasar's parole, but then ordered his reparole. (*Id.* at 8, 12/6/95 Notice of Board Order).

On March 25, 1996, the Board again issued a warrant charging Ceasar with violating non-criminal conditions of parole. (*Id.* at 9, 3/25/96 Notice of Board Order). After a revocation hearing, the Board revoked Ceasar's parole, but then ordered his reparole. (*Id.* at 9, 6/11/96 Notice of Board Order). As of April 8, 1996, the D.C. Department of Corrections determined that Ceasar had 3,650 days remaining on his sentence and that his full term expiration date would be March 30, 2006. (*Id.* at 11, 4/8/96 Face Sheet).

On July 30, 1996, the Board set aside its prior grant of reparole and ordered a

rescission hearing. (*Id.* at 12, 7/31/96 Notice of Board Order). After a rescission hearing, the Board rescinded the grant of reparole and ordered a rehearing in twelve (12) months. (*Id.* at 13, 8/26/96 Notice of Board Order). Ceasar was reparoled on December 9, 1997 and was to remain under supervision until March 30, 2006. (*Id.* at 15, 8/1/97 Certificate of Parole).

On May 15, 1998, The Board issued a parole violation warrant charging Ceasar with criminal and non-criminal violations of parole. (*Id.* at 17, 5/15/98 Notice of Board Order). After a hearing, the Board revoked Ceasar's parole and ordered reparole to supervision with an approved plan on or after January 28, 1999. (*Id.* at 18, 9/2/98 Notice of Board Order). However, Ceasar escaped from custody for twenty-four (24) days prior to the reparole date ordered by the Board. (*Id.* at 19, 5/3/99 Face Sheet). On April 20, 1999, Ceasar received a fifteen (15) month sentence on escape charges. (*Id.*). On May 3, 1999, the D.C. Department of Corrections computed Ceasar's sentence as having 3,277 days remaining with a full term expiration date of September 3, 2008. (*Id.*).

Subsequently, jurisdiction over parole decisions for District of Columbia offenders was transferred from the District of Columbia Parole Board to the Commission, and thus the Commission assumed jurisdiction over Ceasar. *See* National Capital Revitalization and Self-Government Improvement Act of 1997

("Revitalization Act"), Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (2001).

On November 16, 1999, the Commission conducted an initial parole hearing on Ceasar's escape sentence and a rehearing on the parole violation term. (Doc. 11-2 at 20, 11/16/99 Hearing Summary). The Commission denied parole and ordered a rehearing in eighteen (18) months. (*Id.* at 23, 1/6/00 Notice of Action). After the rehearing, the Commission ordered Ceasar reparoled as of August 23, 2001. (*Id.* at 25, 4/27/01 Notice of Action). Ceasar was released on that date and was to remain under supervision for 2,568 days until September 3, 2008. (*Id.* at 27, 8/23/01 Certificate of Parole).

On January 12, 2003, the Commission issued a parole violation warrant upon Ceasar's release from custody on a new one year sentence for second degree burglary imposed by the District of Columbia Superior Court on July 19, 2002. (*Id.* at 28, 1/12/03 Revocation Hearing Summary). Following a hearing, the Hearing Examiner found that Ceasar violated parole by using dangerous and habit forming drugs, failing to submit to drug testing, failing to report to his supervision officer as directed, and for violating the law by committing second degree burglary. (*Id.* at 29, Findings of Fact and Basis). Based on these findings, the Commission revoked Ceasar's parole and ordered that he receive no credit for time spent on parole ("street time") for the

period from August 23, 2001 to January 12, 2003. (*Id.* at 34, 4/17/03 Notice of Action). The Commission further ordered that Ceasar be reparoled on November 10, 2003 after service of twenty-two (22) months. (*Id.*). On November 10, 2003, Ceasar was reparoled and was to remain under supervision until December 15, 2013. (*Id.* at 37, 10/15/03 Certificate of Parole).

On August 10, 2004, Ceasar again was taken into custody on a warrant issued by the Commission. (*Id.* at 41, 3/26/04 Warrant and Return). Following a hearing on September 20, 2004, the Commission found that Ceasar had used dangerous and habit forming drugs, failed to submit to drug testing, violated the condition of parole that he participate in the Drug Aftercare Program, and had violated the law by committing second degree theft. (*Id.* at 42-43, 10/26/04 Notice of Action). Based on these findings, the Commission again revoked parole, ordered that no credit shall be given for street time, and ordered reparole on December 9, 2005 after the service of sixteen (16) months. (*Id.* at 42).

On November 11, 2005, approximately one (1) month before Ceasar was to be reparoled, he escaped from the Hope Village Community Corrections Center halfway house. (*Id.* at 45, 11/22/05 Notice of Action). Consequently, on November 22, 2005, the Commission reopened Ceasar's case and ordered a rescission hearing upon his return to federal custody. (*Id.*). While he was on escape status, Ceasar committed

second degree theft and second degree burglary, and on January 11, 2007, the District of Columbia Superior Court sentenced him on these charges to a twenty-four (24) month term of imprisonment followed by a three (3) year term of supervised release.[2] (*Id.* at 46, 1/11/07 Judgment in a Criminal Case at 2006 CF3 9217). On July 30, 2007, the Commission reopened Ceasar's case and scheduled a hearing following his return to a BOP facility and receipt of documents pertaining to his new offense. (*Id.* at 47, 7/30/07 Notice of Action). The Commission stated its reason for this action as Ceasar's escape from the Hope Village Community Corrections Center on November 11, 2005 and his arrest and conviction of two counts of burglary committed while on escape status. (*Id.*).

## II. DISCUSSION

28 U.S.C. § 2254 provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because District of Columbia offenders are considered state prisoners for purposes of the federal habeas corpus statutes, they must rely on section 2254, rather than 28 U.S.C.

---

[2] Ceasar's request that this Court terminate his term of supervised release relates to this three-year term of supervised release that was imposed by the District of Columbia Superior Court. (*See* Doc. 1 at 15).

§ 2241, to bring claims challenging the validity or the execution of their sentence. *See Madley v. United States Parole Comm'n*, 278 F.3d 1306, 1309 (D.C. Cir. 2002); *Coady v. Vaughn*, 251 F.3d 480, 486 (3d Cir. 2001). In the instant case, Petitioner has failed to demonstrate how the BOP's calculation of his 1983 sentence and his 2007 sentence to a term of supervised release violate the Constitution or laws of the United States, and therefore, habeas relief must be denied.

### A. Calculation of Ceasar's Sentence

Ceasar alleges that the DSCC erred in calculating his sentence by improperly adding time to his 1983 sentence. (Doc. 1-1 at 5-11). Specifically, he alleges that the 1983 sentence should have expired in 2003 because he should have received credit for street time, and thus he claims that he should no longer be subject to the jurisdiction of the Commission and the remainder of his sentence should be vacated. (*Id.*).

Ceasar's claim is without merit. A 1932 District of Columbia statute provides that a D.C. offender forfeits his accrued street time if his parole is revoked. The statute states that "If the order of parole shall be revoked, . . . [t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." D.C. Code § 24-406(a) (formerly D.C. Code § 24-206). Accordingly, "[t]he revocation of parole results in the prolongation of the time that an offender

8

serves on his sentence by the amount of street time that is lost." *Davis v. Moore*, 772 A.2d 204, 209 (D.C. 2001).

In 1987, the D.C. Council enacted the Good Time Credits Act ("GTCA"), D.C. Law 6-218, § 5, 34 D.C. Reg. 484 (1987), which provides that D.C. Code offenders receive credit for their street time against their sentences. The GTCA did not specify whether a D.C. Code offender forfeits his street time when his parole is revoked. As a result, a disagreement ensued between the D.C. Department of Corrections and the Commission as to the interpretation of the GTCA. Pursuant to a recommendation by the District of Columbia Corporation Counsel, the D.C. Department of Corrections issued a regulation providing that, going forward, D.C. parole violators would retain credit for their street time upon revocation of parole. *See Davis*, 772 A.2d at 209 (citing 35 D.C. Reg. 1077, 1078 (1988)). The Commission, on the other hand, continued to follow the approach that the revocation of parole resulted in a forfeiture of street time. *See id.* (citing 28 C.F.R. § 2.65(i) (1999)). As a result of these differing approaches, D.C. Code offenders confined in D.C. institutions received street time credit upon revocation of parole while D.C. offenders confined in federal institutions did not receive street time credit. *See id.* at 209-10.

However, in 1997, the District of Columbia Court of Appeals held that § 24-206(a) was not implicitly repealed by the GTCA and that crediting prisoners with

street time after their parole was revoked was erroneous. *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1095 (D.C. 1997). As a result, the D.C. Department of Corrections "undertook to comply with *Noble* by recalculating the sentences of all parole violators who were still in custody." *Davis*, 772 A.2d at 212. Further, in 2001, the District of Columbia Court of Appeals held that the retroactive application of the *Noble* decision to all D.C. offenders, regardless of whether they were under the supervision of the D.C. Department of Corrections or the Commission, does not implicate the *Ex Post Facto* or Due Process Clauses of the United States Constitution. *Id.* at 208-09.

In the instant case, Ceasar's parole was revoked on multiple occasions. Ceasar argues in his Reply that additional time has been improperly added to his 1983 sentence each time that his parole was revoked. (*See* Doc. 13-1 at 1-3). Ceasar's argument lacks merit because upon each revocation of his parole, he lost credit for his street time and his full term date necessarily was extended. As a result, his full term date is now well beyond what it was at the time he was first paroled. The forfeiture of his street time and extension of his full term date as a result of these multiple rescissions is consistent with *Noble* and *Davis*. In addition, Ceasar has had to serve sentences on subsequent convictions, thus further extending his full term date.

In his Reply and accompanying exhibits, Ceasar attempts to provide his own

summary of the time he has served since 1983 to support his argument that the BOP has improperly added time to his sentence. (*See* Docs. 13-1 – 13-8). However, he fails to provide any proof that the BOP has erroneously calculated the remaining time on his sentence. In fact, he provides evidence that the BOP has properly calculated his sentence. Specifically, Ceasar has submitted two declarations of Augustus Faller, a DSCC Operations Manager, that contain the docket number for a civil case that Ceasar filed in the District of Columbia. (*See* Docs. 13-6, 13-7). In his declarations, dated October 9, 2007 and December 10, 2007, Faller sets forth the details of the various revocations of Ceasar's parole and subsequent convictions. (*See id.*). Faller explains that, as of that time, Ceasar's mandatory release date on his 1983 case was January 19, 2012, and his release date from BOP custody was 2015 due to additional criminal convictions. (*See* Doc. 13-7 ¶ 4). Accordingly, Ceasar's claim that the BOP has erroneously calculated his sentence lacks merit.

**B.     Termination of Supervised Release**

In his Petition, Ceasar requests that this Court terminate the term of supervised release imposed by the District of Columbia Superior Court at 2006 CF3 9216 and 2006 CF3 9217. (*See* Doc. 1-1 at 15; Doc. 11-2 at 46, Judgment in a Criminal Case).[3]

---

[3] The Judgment in a Criminal Case attached as an exhibit to the Response is only for the charges filed at 2006 CF3 9217. (*See* Doc. 11-2 at 46).

The term of supervised release is set to follow Ceasar's jail term on charges of second degree burglary and theft.[4] (*See* Doc. 1-1 at 15; Doc. 11-2 at 46). Ceasar requests that his term of supervised release be terminated so that he can instead be released from prison to a drug treatment facility and residential transitional housing. (*See* Doc. 1-1 at 15). He explains that the three year term of supervised release will not allow him to get the help he needs with his twelve-year substance abuse problem. (*See id.*).

This Court cannot grant the relief Ceasar seeks because he has not demonstrated that the three year term of supervised release to which he has been sentenced violates the Constitution or laws of the United States. *See* 28 U.S.C. 2254(a). Further, he has not argued that the sentencing court's alleged failure to include a provision in his sentence that he be released from prison to a drug treatment facility and/or residential transitional housing is contrary to the Constitution or the laws of the United States. As such, habeas relief on this claim must be denied.

---

[4] Ceasar previously filed his petition pursuant to 28 U.S.C. § 2241. *See Ceasar v. Destination Sentence Computation Center, et al.,* No. 4:07-CV-1646 (Jones, J.). In that case, he also filed an "Ex-Parte Motion for Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)(1)." (No. 4:07-CV-1646 at Doc. 6). Upon review of Ceasar's submissions, this Court concluded that, because Ceasar is a D.C. offender, neither would be properly considered under 28 U.S.C. § 2241. *See Madley,* 278 F.3d at 1309; *Coady,* 251 F.3d at 486. Moreover, because it was not apparent that the claims in the petition and the motion related to different convictions, Petitioner was granted leave to elect to withdraw his petition and file a § 2254 petition including the claims in both the petition and the motion. (*See id.* at Doc. 8). Thereafter, on December 3, 2007, Ceasar filed the instant petition raising both claims. (*See* Doc. 1).

## IV. PENDING MOTIONS

Ceasar has filed several motions in which he requests that this Court vacate the time remaining to be served on his sentence imposed by the District of Columbia Superior Court in 1983. (*See* Docs. 25, 26, 29, 33). All of the motions were submitted after the Petition became ripe.

In his first Motion, filed on June 26, 2008, Ceasar alleges that, following a parole hearing in February 2008, the BOP changed his projected release date to November 8, 2009. (Doc. 25-1 at 3-4). Ceasar attached a copy of a BOP Sentencing Monitoring Computation Data sheet dated April 15, 2008 showing this change. (Doc. 25-2 at 2). This change occurred after the rescission hearing that the Commission scheduled by Notice of Action dated July 30, 2007. (*See* Doc. 11-2 at 47, 7/30/07 Notice of Action). Ceasar also attached a copy of the March 21, 2008 Notice of Action the Commission issued after the hearing rescinding the parole grant effective date of December 9, 2005. (Doc. 25-2 at 11, 3/21/08 Notice of Action). However, the Commission directed that parole be effective May 9, 2006, *nunc pro tunc* to the forty-eight (48) month consecutive sentences imposed in 2007 on burglary charges.[5]

---

[5] May 9, 2006 was the date of offense on the charge of second degree burglary filed at 2006 CF3 9216. (*See* Doc. 25-2 at 4, Sentence Monitoring Computation Data as of 4/15/08).

13

(*Id.*).

Ceasar argues that the change of his release date to November 8, 2009 via good conduct time release is proof that the BOP's calculation of the days remaining on his 1983 sentence is erroneous. (Doc. 25-1 art 2-4.) Consequently, he requests that this Court vacate the days remaining on his 1983 sentence. (*Id.*). Specifically, he argues that the BOP's determination that his full term date on the 1983 sentence expires on March 18, 2015 is incorrect. (*See* Doc. 25-2 at 3, 4/15/08 Sentence Monitoring Computation Data). Ceasar reiterates this argument and request in his other Motions.[6] (*See* Docs. 26, 29, 33).

Ceasar has not demonstrated that his full term date on his 1983 sentence should be adjusted because his release date via good conduct time release has been adjusted. The adjustment to the latter date occurred because of the Commission's decision to make his parole effective May 9, 2006 *nunc pro tunc* such that he is serving his time on the parole violation concurrently to the forty-eight (48) month sentences imposed

---

[6] In the Motion filed on September 25, 2008, Ceasar also complains that staff at FCI Schuylkill were tampering with his legal mail. (*See* Doc. 29 at 2-4). To the extent Ceasar was seeking to raise this issue as a claim here, it is not cognizable in the context of a habeas corpus action. Rather, his claim that his access to legal mail has been restricted constitutes a challenge to the conditions of his confinement and thus may only be raised in a properly filed civil rights action. *See Woodruff v. Williamson*, 2009 WL 703200, at *5 (M.D. Pa. March 12, 2009) (citing *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir.2004)).

in 2007. (*See* Doc. 25-2 at 11, 3/21/08 Notice of Action). In the context of the Petition, Ceasar failed to demonstrate that the BOP miscalculated his full term date on his 1983 sentence, which has necessarily been extended as a result of the multiple revocations of parole. Ceasar's argument in his ensuing motions that the adjustment of his release date via good conduct time release is proof of an error by the BOP as to the calculation of his 1983 sentence also fails. Accordingly, he is not entitled to relief, and his Motions (Docs. 25, 26, 29, 33) will be denied.

## III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) will be denied. An appropriate Order shall enter on today's date.